**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DEBORAH BERG and ) | |
| KAREN BEDENBAUGH ) | |
|     Plaintiffs ) | Civil Action No.: |
| v. ) | |
| ELAINE CIAMPA ) | |
|     Defendant ) | |

## COMPLAINT

## INTRODUCTION

The Plaintiffs seek to enforce a judgment entered in their favor against the Defendant for the Defendant's conversion of trust funds.

## PARTIES

1. The Plaintiff, Deborah Berg ("Ms. Berg") resides in Connecticut.

2. The Plaintiff, Karen Bedenbaugh ("Ms. Bedenbaugh"), resides in North Carolina. Ms. Berg and Ms. Bedenbaugh are sometimes referred to as the "Plaintiffs".

3. The Defendant, Elaine Ciampa ("Ms. Ciampa"), resides at 500 Atlantic Avenue, Apt. 20E, Boston, MA 02210.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. §1332 as there is a diversity of Citizenship between the Plaintiffs and Defendant, and the amount in controversy exceeds $75,000.00.

5. This Court has also subject matter jurisdiction over the case pursuant to 28 U.S.C. §1738 as the Plaintiffs seek for this Court to give full faith and credit to a judgment they obtained against the Defendant.

6. Venue in this District is proper pursuant to 28 U.S.C. § 1391 (b)(1) and (b)(2) as the Defendant resides in this District.

## FACTS

### A. Judgment Against Ms. Ciampa

7. Plaintiffs are sisters, and the Defendant, Ms. Ciampa, is their aunt.

8. Plaintiffs' grandparents, Oscar Nelson ("Mr. Nelson") and Mary Nelson ("Ms. Nelson"), each established a trust (the "Trusts") in 1993 naming their two daughters, Mary Ann Birmingham ("Ms. Birmingham") and Ms. Ciampa, each as a 50% beneficiary. Ms. Birmingham is the mother of the Plaintiffs.

9. Ms. Birmingham died in 2002 after which, by the terms of the Trusts, Ms. Birmingham's 50% interest in the Trusts vested in the Plaintiffs, who, along with two other siblings, each acquired a $1/8^{th}$ beneficial interest in the Trusts as a result.

10. Beginning in around 2011, Ms. Ciampa became the trustee of the Trusts after Mr. Nelson had passed away and after Ms. Nelson had become unable to manage the Trusts. Ms. Ciampa began misusing Plaintiffs' share of the trust funds with increasing frequency and eventually converted the majority of the funds for her own use by the end of 2014.

11. The total amount of funds that Ms. Ciampa depleted for her own use was $1,969,493.13.

12. Ms. Ciampa repeatedly ignored Plaintiffs requests for accountings of the Trusts.

13. Ms. Ciampa had lived in and rented property in Florida during the majority of the time in which she used Plaintiffs' portion of the trust funds.

14. On January 22, 2019, the Circuit Court of the Sixth Judicial Circuit for Pinellas County Florida (the "Florida Court") entered judgment (the "Judgment") against Ms. Ciampa in favor of Ms. Berg and Ms. Bedenbaugh for $246,186.64 each. See Exhibit A.

15. Although prior to the Judgment entering Ms. Ciampa indicated she would make payment to the Plaintiffs, to date, Ms. Ciampa has made no voluntary payments to the Plaintiffs.

## B. Partial Collection of Judgment Through Massachusetts Proceedings

16. On March 5, 2019, Plaintiffs brought suit against Ms. Ciampa in the Suffolk County Superior Court (the "Superior Court Action"). (R.A.I. 006.) There, the Plaintiffs sought, among other things, to reach and apply funds that Ms. Ciampa held with Fidelity Investments ("Fidelity).

17. In the Superior Court Action, Ms. Ciampa challenged the Florida judgment by filing an affidavit from a forensic accountant trying to show that she never misused the trust funds, but rather used the funds for the care of her mother. The affidavit claimed that Ms. Ciampa was spending $84,640.00 per year from the trust funds, from 2011- 2016, on her mother's "clothing, toiletries, and other household goods. It is not credible that $84,640.00 per year, or more than $7,000.00 per month, was used for this purpose, especially since Ms. Nelson was in her 90's and living in a nursing home at the time.

18. The Superior Court entered judgment in favor of the Plaintiffs (the "Superior Court Judgment") for $227,575.86 each and ordered Fidelity to pay over funds in Ms. Ciampa's accounts over to the Plaintiffs until the Superior Court Judgment was satisfied. See Exhibit B. As a result of the Superior Court Judgment, the Plaintiffs were able to collect $211,761.51, or $105,880.75 each, from Fidelity.

19. Ms. Ciampa filed an appeal of the Superior Court Judgment which is pending.

20. One month after filing the Superior Court Action, Massachusetts adopted the Uniform Enforcement of Foreign Judgments Act (the "UEFJ"), G.L. c. 218 § 4A et. seq. The UEFJ allows a simplified procedure for Plaintiffs holding a judgment in one state or in a federal court of the United States to register their judgment in the district court or Boston Municipal Court of the judicial district in which the defendant resides.

21. The Plaintiffs registered the Judgment in the Boston Municipal Court ("BMC") on May 20, 2019. The Plaintiffs took no further action in the BMC to litigate their claims other than to obtain an execution from the BMC.

22. The Plaintiffs recorded their execution with the Suffolk County Registry of Deeds which became a lien on property owned by Ms. Ciampa on Atlantic Avenue in Boston worth over 3.5 million dollars (the "Property"). However, because Ms. Ciampa owns the Property as tenants by the entirety with her husband, the Plaintiffs have not been able to

satisfy any portion of the Judgment through their lien on the Property.

23. The current balance of the Judgment, after taking into account collections resulting from the Superior Court Judgment and a smaller amount collected in Florida, is $290,605.15, which includes $45,116.16 in interest.

### C. Ms. Ciampa's Depletion and Hiding of Assets

24. For years, while not paying any money to the Plaintiffs, Ms. Ciampa paid over $9,000.00 per month towards two properties in Florida (the "Florida Properties") which she has an interest in that she has to date refused to disclose. Ms. Ciampa also used the trust funds to make payments towards the Florida Properties. Upon information and belief, Robert Mintz is the legal owner, and Ms. Ciampa is the beneficial owner of the Florida Properties. Mr. Mintz's relationship with Ms. Ciampa is unclear. Plaintiffs believe Ms. Ciampa is hiding her ownership interest in the Florida Properties in part in order to avoid paying the Plaintiffs.

25. On an application related to one of the Florida Properties, Ms. Ciampa listed herself as an occupant, and listed her marital status as "single". See Exhibit C. This was a fraudulent statement as Ms. Ciampa has at all relevant times been married to another individual, Daniel Ciampa ("Mr. Ciampa").

26. Ms. Ciampa for years also went on multiple trips per month out of state and out of the country while failing to provide any trust funds to Plaintiffs.

27. Ms. Ciampa has been using a variety of techniques to prevent the Plaintiffs from enforcing the Judgment, including using her daughter's bank account to receive funds, and then making payments from her daughter's account to pay her expenses. As an example, Ms. Ciampa uses her daughter's account to pay for the Florida Properties. Prior to the Superior Court Judgment, Ms. Ciampa had been using her own account to receive funds and pay her expenses. Ms. Ciampa now avoids using bank accounts in her own name since she knows the Plaintiffs have a right to levy on them as a result of the Judgment that was entered in their favor.

Ms. Ciampa also has arranged for her husband's wealth management firm, GW & Wade Asset Management Company, Inc., to pay her expenses for her rather than make payment directly to her thereby preventing her income from being applied to satisfy the Judgment.

### COUNT I.   ENFORCEMENT OF JUDGMENT PURSUANT TO 28 U.S.C. § 1738

28. Ms. Ciampa has failed to pay any amount of the Judgment described above, and this judgment is entitled to full faith and credit under 28 U.S.C. § 1738.

29. The Plaintiffs are brining this action in this Court in part to initiate supplementary process proceedings pursuant to M.G.L. Chapter 244 Section 14. Given the amount in controversy, the diversity of citizenship of the parties, and the fact that Ms. Ciampa's transfers of assets involve multiple states, this Court is the most appropriate forum for this dispute.

WHEREFORE, the Plaintiff demands that:

A. Judgment enter against the Defendant in favor of the Plaintiffs in the amount of $290,605.15 plus interest and costs.
B. That the Court hold proceedings under M.G.L. Chapter 244 Section 14 and enter such orders therewith based on the evidence presented.

Respectfully Submitted,

/s/ Joseph Perl
Joseph Perl
Attorney for Plaintiffs
B.B.O. 680509
203 Arlington St., Suite 2
Watertown, MA 02472
781-704-7047
October 25, 2021